IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ESQUIVEL MENDEZ, | CASE NO. 1:07-cr-00058-LJO |
| Movant, | **ORDER ON 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** (Doc. 250). |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## I. INTRODUCTION

Jose Esquivel Mendez ("Mr. Mendez") is a prisoner in federal custody represented by counsel. Now before the Court is his 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. He raises two ineffective assistance of counsel claims. For the reasons discussed below, this Court DENIES Mr. Mendez's motion.

## II. BACKGROUND

**A. Background Facts**[1]

In the days leading up to February 13, 2007, Rigoberto Lopez-Aguilar ("Mr. Lopez-Aguilar") arranged to sell approximately 5.5 pounds of crystal methamphetamine to a Drug Enforcement Administration ("DEA") confidential source at a price of $10,500 per pound. On February 13, 2007,

---

[1] The background facts are derived from the government's trial brief. (Doc. 135).

1

Mr. Mendez and Miguel Angel Nunez-Barragan ("Mr. Nunez-Barragan") arrived at Mr. Lopez-Aguilar's home in two separate cars. The trio retrieved 5.5 pounds of crystal methamphetamine from Mr. Nunez-Barragan's vehicle and took it into Mr. Lopez-Aguilar's home. After the confidential source confirmed that pounds of crystal methamphetamine were at the residence, the DEA obtained and executed a search warrant and retrieved the 5.5 pounds of crystal methamphetamine, which consisted of approximately 2 kilograms of actual methamphetamine. The trio was then arrested. Cell phone records showed that they had contacted each other throughout the day.

**B. Indictment**

On March 1, 2007, the trio was indicted for conspiracy to distribute and to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Doc. 18). They were also indicted for possession with intent to distribute methamphetamine, and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2. (Doc. 18). Mr. Lopez-Aguilar and Mr. Nunez-Barragan pled guilty to the conspiracy charge.

**C. Second Superseding Indictment**

On October 2, 2008, a second superseding indictment was filed against Mr. Mendez. It alleged the same two counts of the original indictment but added a third court which alleged that Mr. Mendez avoided examination by immigration officers, in violation of 8 U.S.C. § 1325(a)(2). (Doc. 102). Mr. Mendez pled not guilty to all charges but plea negotiations ensued. (Doc. 103).

**D. Jury Trial**

The jury trial began on April 28, 2009. (Doc. 190). On the first day of trial, defense counsel informed the Court that Mr. Mendez wanted to take the government's offer. (Doc. 190, p. 4). The government explained that its usual policy is that on the day of trial, the defendant is required to plead to the charges. (Doc. 190, p. 5). The Assistant United States Attorney ("AUSA") assigned to the case offered to call her supervisor to see if there might be an exception to the policy. (*Id*.). The Court gave the AUSA time to call her supervisor however, the supervisor was unavailable. (*Id*.). Mr. Mendez was not willing to plead to the charges in the second superseding indictment so he proceeded to trial. (Doc. 190, p. 6).

Before the trial began, the Court ruled on the government's motion in limine. Prior to trial, the

government filed a motion in limine in which it attempted to prevent Mr. Mendez from seeking testimony from Monica Urena ("Ms. Urena") regarding the purpose of Mr. Mendez's presence at Mr. Lopez-Aguilar's home. (Doc. 146). The government believed Mr. Mendez would call Ms. Urena to testify that Mr. Mendez was at Mr. Lopez-Aguilar's home in order to rent it and not to conduct a drug transaction. (Doc. 146). The Court determined that Ms. Urena could not testify as to what Mr. Mendez's intent was regarding the visit because that would require that he told her, which is hearsay. (Doc. 190, p. 7). The Court further stated that Ms. Urena could testify regarding her own intent and that it was her intent to sign the rental agreement. (Doc. 190, p. 7-8).

After a four-day trial, the jury convicted Mr. Mendez of all three counts in the superseding indictment and found true the amounts of methamphetamine alleged. (Doc. 152).

**E. Sentence and Judgment**

On August 29, 2009, the Court sentenced Mr. Mendez to 292-months imprisonment followed by 60-months of supervised release. (Doc. 194, p. 17). The judgment was entered on September 2, 2009. (Doc. 182). On the same day Mr. Mendez filed a notice of appeal. (Docs. 184, 189).

**F. Appeal**

On appeal Mr. Mendez raised two ineffective assistance of counsel claims. First, he argued that counsel failed to argue that Ms. Urena's testimony was admissible under FED. R. EVID. 803(c) or *Mutual Life Ins. Co., v. Hillmon*, 145 U.S. 285 (1892). Second, he argued that counsel failed to "preserve" the government's plea offer or determine when it expired. The Ninth Circuit declined to review these claims on direct appeal based on its determination that the record was not sufficiently developed nor did it contain "evidence of such obvious denial of adequate representation, to warrant departure from the rule that claims of ineffective assistance are generally inappropriate on direct appeal and should be raised in habeas corpus proceedings." *United States v. Mendez*, 452 Fed. Appx. 739, 740 (9th Cir. 2011) (citing *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir. 2003)). Mr. Mendez filed a petition for writ of certiorari in the Supreme Court which was denied on February 12, 2012.

On April 27, 2012, Mr. Mendez placed a pro se § 2255 motion in the prison mailing system. (Doc. 241). Shortly thereafter, Mr. Mendez's appellate counsel moved the Court for an expansion of her appointment in order to represent Mr. Mendez on his § 2255 motion. (Doc. 243). The Court granted

3

counsel's motion, struck Mr. Mendez's pro se motion, and authorized counsel to file an amended motion. (Doc. 244). Counsel filed an amended motion on September 17, 2012. (Doc. 250). In the amended motion, Mr. Mendez raises the same two arguments he raised on appeal. In ground one, he contends that he received ineffective assistance of counsel when counsel failed to preserve the plea offer or determine when it expired. In ground two, he argues that he received ineffective assistance of counsel when counsel failed to argue relevant rules of evidence and relevant evidentiary doctrine in support of the admissibility of Ms. Urena's testimony.

### III. DISCUSSION

**A. Legal Standard**

To demonstrate ineffective assistance of counsel, a petitioner must establish deficient performance and prejudice. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In order to establish deficient performance, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. This requires petitioner to "show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. There is a strong presumption that counsel's performance fell within the "wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).

The second factor petitioner must establish is prejudice. *Strickland*, 466 U.S. at 693. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Prejudice analysis must not only focus on outcome determination but also on the question of whether or not "the result of the proceeding was fundamentally unfair or unreliable." *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994) (*quoting Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)). "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

**B. Ground One**

Mr. Mendez contends that he was deprived of effective assistance of counsel because counsel

4

failed to ensure that his acceptance of the government's offer was timely. Mr. Mendez has failed to demonstrate that he received ineffective assistance of counsel because he has failed to satisfy the deficient performance prong of the *Strickland* test.

"[C]riminal defendants require effective counsel during plea negotiations." *Missouri v. Frye*, 132 S. Ct. 1399, 1407-08 (2012). "[A]n attorney's failure to communicate the government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards." *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994). Here, counsel communicated the terms of the plea offer to Mr. Mendez. Accordingly, the issue is not whether the offer was communicated but whether counsel adequately communicated the date the offer expired.

Counsel's declaration, submitted by Mr. Mendez, provides that Mr. Mendez requested that counsel negotiate a ten year deal with the government. (Doc. 250, ¶ 5). Counsel obtained an offer of eleven years, then an offer of ten years but Mr. Mendez refused both. (Doc. 250, ¶ 6). Counsel then obtained an offer of eight years which Mr. Mendez also refused. (Doc. 250, ¶ 7). Mr. Mendez told counsel that he wanted to see if he could get a better deal on the day of trial. (Doc. 250, ¶ 8). The government never expressly told counsel that the offer would expire on a particular date so counsel never told Mr. Mendez that the offer would expire. (Doc. 250, ¶ 12-13). Counsel did however, tell Mr. Mendez that the government did not ordinarily keep offers open to the first day of trial. (Doc. 250, ¶ 15).

On the first day of trial, Mr. Mendez accepted the eight year offer. (Doc. 250, ¶ 10). Counsel relayed Mr. Mendez's acceptance to the government but the government refused to accept it. (Doc. 250, ¶ 11). The government explained in open court that its usual policy is that on the day of trial, the defendant is required to plead to the charges. (Doc. 190, p. 5). The Court allowed the AUSA to contact her supervisor to see if there might be an exception to the policy but the supervisor was unavailable. (Doc. 190, p. 5). Mr. Mendez was not willing to plead to the charges in the second superseding indictment so a trial ensued. (Doc. 190, p. 6).

Mr. Mendez has failed to show that counsel's performance fell below an objective standard of reasonableness because counsel communicated the government's offer in a timely manner and communicated the possibility that the offer may not be available on the first day of trial. Accordingly,

1  Mr. Mendez had the tools he needed to make an informed decision.  The Court is unpersuaded by Mr.
2  Mendez's contention that given his express wish to wait until the day of trial to accept the government's
3  offer, counsel should have made sure that the offer would still be open.  This argument is unpersuasive
4  because under prevailing professional standards, counsel has a duty to communicate the offer and its
5  consequences in a timely manner which counsel did.  Mr. Mendez was well aware of the possibility that
6  the offer would not be available on the day of trial.  Thus, counsel fulfilled his duty to ensure that Mr.
7  Mendez had the tools he needed to make an informed decision.

**C. Ground Two**

Mr. Mendez contends that he received ineffective assistance of counsel when counsel failed to argue relevant rules of evidence and evidentiary doctrine in support of the admissibility of Ms. Urena's testimony.

Even if counsel had been deficient by failing to make the evidentiary arguments urged by Mr. Mendez, he is unable to establish prejudice because he is unable to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Prior to trial, the government filed a motion in limine in which it attempted to prevent Mr. Mendez from seeking testimony from Ms. Urena regarding the purpose of Mr. Mendez's presence at Mr. Lopez-Aguilar's home.  (Doc. 146).  The government believed Mr. Mendez would call Ms. Urena to testify that Mr. Mendez was at Mr. Lopez-Aguilar's home in order to rent a room and not to conduct a drug transaction.  (Doc. 146).  The Court determined that Ms. Urena could not testify regarding Mr. Mendez's intent.  (Doc. 190, p. 7).

Even if the Court had allowed Ms. Urena to testify regarding Mr. Mendez's intent, Mr. Mendez cannot show a reasonable probability that the outcome of the proceeding would have been different because the homeowner, Ms. Urena, and Mr. Mendez all testified that Mr. Mendez was there to rent a room.  The homeowner testified that Mr. Mendez talked to her briefly about renting a room.  (Doc. 193, p. 10).  Ms. Urena testified that when she and Mr. Mendez arrived in Fresno they went to look at a house that was for rent.  (Doc. 193, p. 47).  Mr. Mendez testified that he was in Fresno to look at a house for rent.  (Doc. 193, p. 90).  Thus, although Ms. Urena was unable to testify regarding Mr. Mendez's intent, the homeowner and Ms. Urena's testimony provided circumstantial evidence in support of Mr. Mendez's

testimony regarding why he traveled to Fresno. Accordingly, Mr. Mendez's testimony did not stand "naked before [the] jury and the district court" (Doc. 250-1, p. 21) as Mr. Mendez would like the Court to believe. Mr. Mendez has failed to show a reasonable probability that had Ms. Urena testified regarding Mr. Mendez's intent, the result of the proceeding would have been different.

**D. Certificate of Appealability**

28 U.S.C. § 2253(c)(1) precludes an appeal from a final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability ("COA"). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. at 484; *see also Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003). To meet this standard, the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; *or* that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000) (alteration in original) (internal quotation marks and brackets omitted) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). In the absence of a COA, no appeal in a § 2255 proceeding may be heard. 28 U.S.C. § 2253(c).

This Court has reviewed the record of this case and finds that the issues are not debatable among jurists of reason. *See Lambright*, 220 F.3d at 1024-25. Accordingly, a COA is improper.

### IV. CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES Mr. Mendez's § 2255 motion to vacate, set aside, or correct sentence;
2. DENIES Mr. Mendez's COA; and
3. DENIES the government's request for additional time to file its opposition as moot.
4. The clerk is directed to close case no. 1:12-cv-00767-LJO.

IT IS SO ORDERED.

**Dated:   November 30, 2012**            /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE